IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE REPRESENTATIVE OF THE ESTATE OF BEAUFORD JONES, | § § § | |
| Plaintiff, | § § | |
| V. | § § | 1-15-CV-076  RP |
| DELORES SMITH; KATHERINE WINN; C&J FINANCIAL, LLC; KENNETH JONES; CLARA M. LABOY; DARRYL JONES; SANDY MORGAN; MARCUS D. LEWIS; AND DOES 1 THROUGH 10, INCLUSIVE, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the above-entitled cause of action.  The parties appeared for a bench trial and the Court heard testimony and evidence on January 7, 2016 and January 22. 2016. Pursuant to the Court's oral order, the parties were afforded an opportunity to file post-trial briefing. On January 31, 2016, the Estate of Beauford Jones, Katherine Winn, Sandy Morgan and Darryl Jones filed a joint closing argument (Clerk's Dkt. #94).  Having considered the evidence and testimony, as well as post-trial briefing, the Court enters the following Memorandum Opinion and Order.

### I. Procedural History

This case was originally filed by Great American Life Insurance Company ("GALIC") seeking to determine the beneficiary of a $25,000 life insurance policy (the "Policy").  The named insured of the Policy is Beauford Jones ("Beauford").  GALIC identified the claimants to the Policy as the Estate of Beauford Jones, the six children of Beauford, namely Delores Smith ("Smith"), Katherine Winn ("Winn"), Kenneth Jones ("Kenneth"), Clara M. Laboy ("Laboy"), Darryl Jones ("Darryl") and Sandy Morgan ("Morgan"), as well as Marcus D. Lewis, the son of Delores Smith.  Also identified

as a claimant was C&J Financial, LLC , pursuant to an assignment of a portion of the proceeds of the Policy as payment for a life celebration service following Beauford's death..

By order dated January 29, 2015 the Court granted GALIC's motion to deposit the proceeds of the Policy, totaling $25,583.71, into the registry of the court.  By order dated April 21, 2015, the Court permitted GALIC to be discharged from this case and awarded fees to GALIC in the amount of $1,250.

On November 19, 2015 Magistrate Judge Mark Lane conducted a mediation session. During the mediation the parties agreed to pay the sum of $10,800 to satisfy the claim of C&J Financial, LLC.  By order dated December 29, 2015 the Court ordered those funds disbursed to counsel for C&J Financial, LLC.

Prior to trial, Marcus D. Lewis ("Lewis") had not made an appearance in this action.  Nor was he present at trial.  The Estate of Beauford Jones orally moved for an entry of default against Lewis, and dismissing any claim he may have to the Policy.  The Court orally granted the motion at the outset of trial.

The sole issue remaining before the Court is which party is the legal beneficiary to the Policy.

## II. Findings of Fact

The parties stipulated and agreed that the Policy was in effect at the time of Beauford's death.  The undisputed pleadings and testimony in this case establish that the Policy was issued on April 3, 2007.  Clara B. Jones ("Clara"), the wife of Beauford and the mother of all six of his children, was named as primary beneficiary.  "Children Born of Marriage (Divide Equally)" were named as contingent beneficiary.  (Compl. ¶¶ 15-16 & Exs. A-B).

On November 3, 2011, Beauford signed a Policy Change Request.  On that form, Winn is named as the Policy's primary beneficiary and Morgan is named as the contingent beneficiary.  The

form also states the Policy had been lost and requested a duplicate policy be issued.  In addition, in a space labeled "miscellaneous requests," a handwritten note states "No Information is to be given out to anyone other than the beneficiary."  (*Id*. ¶ 16 & Ex. C).

Clara passed away on September 12, 2013.  (Def. Ex. #3).  On September 30, 2013, Beauford signed a second Policy Change Request.  On that form, Smith is named as the Policy's primary beneficiary and Lewis is named as the contingent beneficiary.  (*Id*. ¶ 16 & Ex. D).  Beauford Jones passed away on April 27, 2014.  (*Id*. ¶ 19).

### III.  Conclusions of Law

The sole issue before the Court is the validity of the second Policy Change Request, signed by Beauford Jones on September 30, 2013.  The parties seeking to invalidate that document, specifically the Estate of Beauford Jones, Winn, Morgan and Darryl (collectively the "Challengers") contend it is invalid because it was entered into as the result of fraud or undue influence exerted on Beauford by the newly named primary beneficiary, his daughter Smith.

Texas recognizes undue influence in the procurement of a testament as a ground for invalidation which is separate and distinct from incapacity, "undue influence implies the existence of a testamentary capacity subjected to and controlled by a [dominant] influence or power." *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963).  "To show undue influence, a plaintiff must prove: '(1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence.'"  *Wackman v. Rubsamen*, 602 F.3d 391, 412–13 (5th Cir. 2010) (quoting *Rothermel,* 369 S.W.2d at 922).  The cause of action can also apply to void a request to change the beneficiary of a life insurance policy.  *See Harmon v. Harmon*, 962 F. Supp. 2d 873, 881-82 (S.D. Tex. 2013) (analyzing claim challenging validity of change of beneficiary as result of undue

influence); *Paige-Hull v. Wofford*, 2008 WL 4274504, at *7 (N.D. Tex. Sept. 17, 2008) (applying undue influence in context of execution of insurance beneficiary designation form); *Cobb v. Justice*, 954 S.W.2d 162, 168 (Tex .App.–Waco 1997, pet. denied) (holding former beneficiary may bring suit to contest change of beneficiary on basis change was accomplished as result of undue influence). The party seeking to set aside the instrument bears the burden of proving undue influence. *Rothermel*, 369 S.W.2d at 922.

The Challengers argue that Beauford was suffering tremendous depression and emotional turmoil immediately following Clara's death. They maintain Smith took advantage of Beauford's emotional state and isolation from Winn and Morgan to exercise undue influence over Beauford and compel him to change the beneficiary of the Policy to her and the contingent beneficiary to her son, Lewis.

Each of Beauford's six children testified at trial. Much of the testimony addressed the familial relationships prior to the death of Clara. While the testimony was somewhat conflicting, it establishes that the closeness of the ties between Beauford, Clara and their children varied over time, as did the ties between their children.

The testimony also suggests the death of Clara was not an easy occasion for the family. Clara passed away at home. The scene was apparently chaotic as family members, paramedics and police officers were all present. According to Winn and Morgan, Smith accused Winn of assaulting her and obtained a protective order against Winn, although the related criminal charges were later dropped.

After Clara's death, Beauford was living in his own home. Although he was unable to drive himself, he was able to get driven by a friend or one of his children if he wished to go anywhere.

Each of the witnesses testified Beauford was sad following the death of Clara. However, while Morgan described her father as stressed and not himself after Clara's death, she stated he

was not receiving any medication for any mental problems. Morgan also testified she did not visit her father during that period.

Darryl similarly testified that Beauford was depressed after the death of Clara, but was not suffering from any mental conditions. He also testified he saw Beauford every day after Clara's death. In contrast, Winn testified she was not a part of Beauford's life and did not see him after Clara died.

Kenneth testified he saw Beauford regularly after Clara's death. He described his father as missing Clara, and depressed. However, Kenneth also stated no one could make Beauford do anything he did not want to do, and that characteristic did not change after Clara's death.

According to Laboy, after Clara's death she saw Beauford about once per week, but spoke with him more frequently. Laboy stated Beauford told her that he wished to change the beneficiary of the Policy after Clara's death. Laboy testified Beauford was a strong man, who came to his decisions himself, including the decision to change the beneficiary of his insurance policy.

Smith testified that she saw Beauford regularly after Clara died, at least twice per week. She stated Beauford was depressed, but able to make his own decisions. According to Smith, Beauford decided to change the beneficiary of the Policy after Clara's death because he was not happy with Winn or her care of Clara. Smith testified Beauford asked her to call his insurance agent to come to the house to change the beneficiary. She stated the agent is the one who filled out the second Policy Change Request and was present when Beauford signed. Laboy corroborated Smith's version of events, testifying that she was on the phone with Beauford when the insurance agent arrived at Beauford's home on September 30, 2013.

The Court is not persuaded by the Challengers' assertion of undue influence. They suggest Smith alienated and removed Winn and Morgan from Beauford's life after the death of Clara and took advantage of his impaired mental state.

As to the Challengers' first contention of alienation by Smith, the evidence is to the contrary. Winn testified that a court order barred her from contact with Smith after Clara's death. However, the witnesses all testified that Beauford was living in his own home at the time. Moreover, there was no testimony which established that Winn or Morgan were unable to contact Beauford via telephone. In fact, Morgan testified she did speak with her father via telephone during that time. Further, the testimony established Beauford was regularly driven to places outside his home, either by a friend or one of his children.

The Challengers also maintain that Smith took advantage of Beauford's impaired state after Clara's death. But the evidence shows, while depressed, Beauford was well able to make his own decisions. Smith, Laboy and Kenneth all testified that their father was a man of strong will, a characteristic which did not change after Clara's death. Although Darryl and Kenneth both testified that Beauford's health declined toward the end of his life, there was no testimony that, at the time of the signing of the second Policy Change Request Beauford was not able to exercise his own will.

The Challengers argue that Beauford's naming of Lewis as contingent beneficiary evidences Smith's influence, noting testimony that Beauford had a closer relationship with his other grandchildren, including Laboy's son Juan. Smith explained that she suggested Lewis, and that Beauford agreed, on the expectation Lewis would do the right thing. One may "request or even importune and entreat another to execute a favorable dispositive instrument, but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker they will not taint the validity of the instrument with undue influence." *Estate of Davis*, 920 S.W.2d 463, 466 (Tex. App.–Amarillo 1996, writ denied). And the unrebutted testimony of Smith and Laboy establishes that Beauford's insurance agent was present at the time the second Policy Change Request was signed. This testimony undercuts any contention that Smith was actually exerting influence over Beauford. *See Wackman*, 602 F.3d at 413 (while undue influence may be proved by circumstantial evidence, "[t]he evidence must show more than mere opportunity to exercise

influence"). *See also Paige–Hull*, 2008 WL 4274504, at *7 ("When circumstantial evidence is relied upon, the circumstances must be so strong and convincing and of such probative force as to lead a well-guarded mind to a reasonable conclusion not only that undue influence was exercised but also that it controlled the willpower of the testator at the precise time the will was executed.").

In sum, the Challengers presented no direct evidence of undue influence and their circumstantial evidence is weak and not probative. The Court thus concludes the undue influence claim fails.

The Challengers also suggest in their post-trial briefing that Smith may have fraudulently induced Beauford to sign the second Policy Change Request. They point to Darryl's testimony that Beauford had poor vision and slept frequently, suggesting Beauford may not have been aware of what he was signing. However, Darryl was describing Beauford's condition in the last few months of his life. Kenneth similarly testified that Beauford slept often and was less able to care for himself at that time. But the relevant time period is several months earlier. And, significantly, the testimony of Smith and Laboy establishes that Beauford signed the second Policy Change Request in the presence of his insurance agent. The Court finds this testimony a clear rebuttal of any suggestion that Smith committed fraud in obtaining Beauford's signature on the second Policy Change Request.

## IV. Conclusion

Thus, in accordance with the foregoing:

The Court ORDERS the United States District Court Clerk to close the Certificate of Deposit, currently held at Frost Bank, representing monies heretofore deposited under this cause number.

The Court further ORDERS Frost Bank to deduct the appropriate registry fee, as authorized by the Judicial Conference Schedule of Fees implemented by the Administrative Office of the

United States Courts, effective February 3, 1992, for the handling and servicing of interest-bearing accounts deposited to financial institutions pursuant to 28 U.S.C. § 2041 and Rule 67 of the Federal Rules of Civil Procedure, and issue a check payable to the "Clerk, United States District Court" for the amount of the registry fee.

The Court further ORDERS Frost Bank, to release to the United States District Court Clerk all remaining funds of the $25,000 that was deposited on January 29, 2015, plus accrued interest, less the aforementioned registry fee, in a cashier's check payable to: Delores Smith.

The Court further ORDERS that Delores Smith must complete IRS Form W-9 (available at [www.irs.gov](www.irs.gov)) and submit the form to the attention of the Clerk, United States District Court, financial deputy within ten (10) days from the date of this Order before the check will be released to her

The Court further ORDERS that all findings of fact that are more appropriately considered conclusions of law are to be so deemed.  Any conclusion of law more appropriately considered a finding of fact, shall be so deemed.

The Court finall ORDERS that all other relief requested herein is denied.

**SIGNED** on February 3, 2016.

*[signature]*

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE